# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

YOLANDA HARRIS,

        Plaintiff,

v.                                 Case No. 3:19-cv-1181-JRK

ANDREW M. SAUL,
Commissioner of Social Security,

        Defendant.

_____

## OPINION AND ORDER[1]

## I.   Status

Yolanda Harris ("Plaintiff") is appealing the Commissioner of the Social Security Administration's ("SSA('s)") final decision denying her claim for disability insurance benefits ("DIB"). Plaintiff's alleged inability to work is the result of memory loss, stress, pustular psoriasis, and a fracture in the neck that was sustained in a motor vehicle accident. See Transcript of Administrative Proceedings (Doc. No. 14; "Tr." or "administrative transcript"), filed February 6, 2020, at 279-80, 292, 415. Plaintiff filed an application for DIB on February

---

[1]     The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 13), filed February 6, 2020; Reference Order (Doc. No. 15), entered February 7, 2020.

10, 2016,[2] alleging an onset disability date of December 10, 2015. Tr. at 389. The application was denied initially, Tr. at 279-89, 290, 291, 310-12, and upon reconsideration, Tr. at 292-307, 308, 309, 314-18.

On August 21, 2018, an Administrative Law Judge ("ALJ") held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel, and a vocational expert ("VE"). See Tr. at 250-78. Plaintiff was thirty-nine years old at the time of the hearing. Tr. at 279 (indicating date of birth). On October 10, 2018, the ALJ issued a Decision finding Plaintiff not disabled through the date of the Decision. See Tr. at 29-48.

Thereafter, Plaintiff sought review of the Decision by the Appeals Council. See Tr. at 386. On August 14, 2019, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, thereby making the ALJ's Decision the final decision of the Commissioner. On October 17, 2019, Plaintiff commenced this action under 42 U.S.C. § 405(g) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.[3]

---

[2]     Although actually completed on February 10, 2016, see Tr. at 389, the protective filing date of the application is listed elsewhere in the administrative transcript as December 29, 2015, see, e.g., Tr. at 279.

[3]     The Complaint inadvertently alleges Plaintiff is also seeking review under 42 U.S.C. § 1383(c)(3). See Complaint at 1. This statute is inapplicable because Plaintiff's appeal does not involve supplemental security income.

On appeal, Plaintiff makes two arguments: 1) "the ALJ erred by not including the mental limitations in the hypothetical to the VE," specifically Plaintiff's "limitations regarding concentration, persistence or pace and the limitations in interacting with people"; and 2) "the [D]ecision of the ALJ is not supported by su[bs]tantial evidence" because the ALJ erred in discounting the opinions of Advanced Practice Registered Nurse ("APRN") Tracy Ervin,[4] and instead relying on the opinions of the non-examining state agency medical consultant, Jennifer Meyer, M.D., who reviewed Plaintiff's DIB application at the reconsideration level in August 2016, see Tr. at 296-304. Memorandum in Support of Complaint (Doc. No. 18; "Pl.'s Mem."), filed February 12, 2020, at 6, 7-8 (emphasis and some capitalization omitted); see Pl.'s Mem. at 4 (discussing Dr. Meyer's August 2016 opinions). On June 4, 2020, Defendant filed a Memorandum in Support of the Commissioner's Decision (Doc. No. 19; "Def.'s Mem.") addressing Plaintiff's arguments. After a thorough review of the entire record and consideration of the parties' respective memoranda, the undersigned finds that the Commissioner's final decision is due to be affirmed.

---

[4]    Ms. Ervin treated Plaintiff for her mental health impairments. See, e.g., Tr. at 1383. The administrative transcript contains progress notes from Ms. Ervin spanning July 2017 to November 2018. See Tr. at 86-242, 1383-417.

## II.   The ALJ's Decision

When determining whether an individual is disabled,[5] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion through step four, and at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the five-step sequential inquiry. See Tr. at 31-48. At step one, the ALJ determined Plaintiff "has not engaged in substantial gainful activity since December 10, 2015, the alleged onset date." Tr. at 31 (emphasis and citation omitted). At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, obesity, disorders of the spine, disorders of the knees, disorders of the feet, . . . schizoaffective disorder, bipolar

---

[5]      "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

type, generalized anxiety disorder (GAD), panic disorder without agoraphobia, [and] posttraumatic stress disorder (PTSD)." Tr. at 31 (emphasis and citation omitted). At step three, the ALJ ascertained that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 32 (emphasis and citation omitted).

The ALJ determined that Plaintiff has the following residual functional capacity ("RFC"):

> [Plaintiff can] perform light work as defined in 20 [C.F.R. §] 404.1567(b) except with frequent . . . climbing of ramps/stairs, balancing, stooping, kneeling, crouching, and crawling. [Plaintiff] can do no more than occasional climbing of ladders, ropes and scaffolds. She must avoid concentrated exposure to vibration, dangerous machinery, unprotected heights, and pulmonary irritants (dust, fumes, odors, gases, and poor ventilation). [Plaintiff] can do no more than simple, routine repetitive tasks.

Tr. at 34 (emphasis omitted).

At step four, the ALJ found that Plaintiff "is unable to perform any past relevant work." Tr. at 46 (emphasis and citation omitted). At the fifth and final step of the sequential inquiry, after considering Plaintiff's age ("36 years old . . . on the alleged disability date"), education ("a limited education"), work experience, and RFC, the ALJ relied on the VE's testimony and found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as "night cleaner"; "labeler"; "inspector, hand

packager"; "table worker"; "addresser"; and "sorter." Tr. at 46-47 (emphasis and citation omitted). The ALJ concluded Plaintiff "has not been under a disability . . . from December 10, 2015[ ] through the date of th[e D]ecision." Tr. at 48 (emphasis and citation omitted).

### III.   Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. § 405(g). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)); see also Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019); Samuels v. Acting Comm'r of Soc. Sec., 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted). It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation

omitted). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

### IV.   Discussion

## A.   VE Hypothetical

### 1.   Parties' Arguments

Plaintiff asserts that "[t]he ALJ asked the VE to assume certain limitations about a hypothetical person to determine if that person could perform [Plaintiff's] past relevant work or any other work in the economy" but that "the ALJ failed to include [in the hypothetical] all [of Plaintiff's] limitations, specifically the mental health limitations regarding concentration, persistence or pace and the limitations in interacting with people." Pl.'s Mem. at 6. Plaintiff contends that "[i]t is not clear whether the moderate limitations regarding concentration, persistence and pace would impact [P]laintiff's ability to work because they were not included in the hypothetical to the VE." <u>Id.</u>

Responding, Defendant argues that "[c]ontrary to Plaintiff's contention, the ALJ's RFC finding and hypothetical adequately account[ ] for her moderate limitations with concentrating, persisting, and maintaining pace," because they "limited Plaintiff to jobs requiring no more than 'simple, routine repetitive tasks.'" Def.'s Mem. at 5 (citations omitted). Defendant does not address

Plaintiff's argument regarding her limitations in interacting with others. <u>See generally</u> Def.'s Mem. at 5-8.

### 2. Applicable Law

An ALJ poses a hypothetical question to a VE as part of the step-five determination of whether the claimant can obtain work in the national economy. <u>See</u> <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1227 (11th Cir. 2002). When the ALJ relies on the testimony of a VE, "the key inquiry shifts" from the RFC assessment in the ALJ's written decision to the adequacy of the RFC description contained in the hypothetical posed to the VE. <u>Brunson v. Astrue</u>, 850 F. Supp. 2d 1293, 1303 (M.D. Fla. 2011) (quoting <u>Corbitt v. Astrue</u>, No. 3:07-cv-518-HTS, 2008 WL 1776574, at *3 (M.D. Fla. Apr. 17, 2008) (unpublished)).

In determining an individual's RFC and later posing a hypothetical to a VE that includes the RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; <u>see also</u> 20 C.F.R. § 404.1545(a)(2); <u>Swindle v. Sullivan</u>, 914 F.2d 222, 226 (11th Cir. 1990) (stating "the ALJ must consider a claimant's impairments in combination" (citing 20 C.F.R. § 404.1545; <u>Reeves v. Heckler</u>, 734 F.2d 519, 525 (11th Cir. 1984))). "In order for a [VE]'s testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." <u>Wilson</u>, 284 F.3d at 1227 (citing <u>Jones v. Apfel</u>, 190 F.3d 1224, 1229 (11th Cir. 1999)); <u>see also</u> <u>Loveless</u>

v. Massanari, 136 F. Supp. 2d 1245, 1250 (M.D. Ala. 2001). While the hypothetical question must include all of the claimant's impairments, it need not include impairments properly rejected by the ALJ. See McSwain v. Bowen, 814 F.2d 617, 620 n.1 (11th Cir. 1987). Moreover, "questions that 'implicitly account[ ] for the claimant's limitations' are sufficient to meet this requirement." Henry v. Comm'r, Soc. Sec. Admin., 802 F.3d 1264, 1269 (11th Cir. 2015) (quoting Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1180-81 (11th Cir. 2011)); see also Thornton v. Comm'r, Soc. Sec. Admin., 597 F. App'x 604, 612 (11th Cir. 2015).

In Winschel, the Court of Appeals for the Eleventh Circuit found error in an ALJ's decision because the ALJ determined the claimant had "a moderate limitation in maintaining concentration, persistence, and pace" but "did not indicate that medical evidence suggested [the claimant's] ability to work was unaffected by this limitation, nor did he otherwise implicitly account for the limitation in the hypothetical [to the VE]." 631 F.3d at 1179. According to the Eleventh Circuit, "the ALJ should have explicitly included the limitation in his hypothetical question to the [VE]." Id. Nevertheless, the Eleventh Circuit suggested that in other appropriate circumstances, an ALJ may properly find that the medical evidence of record supports only an RFC limitation of unskilled work despite moderate limitations in concentration, persistence, or pace. See id. (citations omitted) (collecting cases finding that "when medical evidence

demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace, courts have concluded that limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations").

Post-Winschel, the Eleventh Circuit (albeit in unpublished opinions) has recognized that a moderate limitation in concentration, persistence and pace can be sufficiently accounted for by posing a hypothetical to a VE that limits an individual to simple, unskilled work (or something similar) when the medical evidence demonstrates an ability to perform such work. See, e.g., Mijenes v. Comm'r of Soc. Sec., 687 F. App'x 842, 846 (11th Cir. 2017) (finding that "[b]ecause the medical evidence showed that [the claimant] could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of [the claimant's RFC] to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace" (citation omitted)); Timmons v. Comm'r of Soc. Sec., 522 F. App'x 897, 907-08 (11th Cir. 2013) (approving of a limitation to "simple, one-two step task[s with] only occasional contact with the public, coworkers, and supervisors" as accounting for moderate limitation in concentration, persistence and pace in light of opinions of two non-examining psychologists' opinions supporting the finding); Jacobs v. Comm'r of Soc. Sec., 520 F. App'x 948, 951 (11th Cir. 2013) (finding a limitation "to one to three step non-complex tasks" sufficiently

accounted for moderate limitation in concentration, persistence, and pace); Washington v. Soc. Sec. Admin., Comm'r, 503 F. App'x 881, 883 (11th Cir. 2013) (finding a limitation "to performing only simple, routine repetitive tasks with up to three-step demands, and only occasional changes in the work setting, judgment, or decision making" was sufficient to account for moderate limitation in maintaining concentration, persistence, and pace); Scott v. Comm'r of Soc. Sec., 495 F. App'x 27, 29 (11th Cir. 2012) (distinguishing Winschel and finding that "the medical evidence demonstrated that [the claimant] could engage in simple, routine tasks or unskilled work despite moderate limitations in concentration, persistence, and pace"); Jarrett v. Comm'r of Soc. Sec., 422 F. App'x 869, 871 (11th Cir. 2011) (finding that the limitations of simple tasks and only being able to concentrate for brief periods of time accounted for the claimant's moderate difficulties in concentration, persistence, and pace); see also, e.g., Davis v. Comm'r of Soc. Sec., 11 F. Supp. 3d 1154, 1159 (M.D. Fla. 2014) (recognizing Winschel's approval of limiting a hypothetical to unskilled work—despite moderate limitations in concentration, persistence, and pace— when the medical evidence supports it); Dawson v. Comm'r of Soc. Sec., No. 6:11-cv-1128-GAP-KRS, 2012 WL 1624267 (M.D. Fla. May 9, 2012) (unpublished) (collecting cases which recognize that the inclusion of limitations such as work involving simple tasks and/or simple instructions properly

accounts for moderate limitations in concentration, persistence, and pace), aff'd, 528 F. App'x 975 (11th Cir. 2013).

### 3. Analysis

#### a. *Concentration, Persistence, and Pace*

The ALJ found that "[w]ith regard to concentrating, persisting, or maintaining pace, [Plaintiff] ha[s] moderate limitation." Tr. at 32. The RFC and the hypothetical posed to the VE limit Plaintiff to "simple, routine repetitive tasks." Tr. at 34 (emphasis omitted) (Decision); Tr. at 274-75 (hypothetical). Moreover, in finding at step five that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, the ALJ identified jobs that are all unskilled work ("night cleaner"; "labeler"; "inspector, hand packager"; "table worker"; "addresser"; and "sorter"). Tr. at 47 (Decision); Tr. at 275-76 (VE testimony). See SSR 00-4p, 2000 WL 1898704, at *3 (stating "unskilled work corresponds to a[ Specific Vocational Preparation ("SVP") level] of 1-2"); U.S. Dep't of Labor, Dictionary of Occupational Titles (DOT) (4th ed. 1991), § 323.687-018, 1991 WL 672784 (stating "night cleaner" has an SVP level of 2); § 920.687-126, 1991 WL 687992 (stating "labeler" has an SVP level of 2) § 559.687-074, 1991 WL 683797 (stating "inspector and hand packager" has an SVP level of 2); § 739.687-182, 1991 WL 680217 (stating "table worker" has an SVP level of 2); § 209.587-010, 1991 WL 671797 (stating "addresser" has an SVP level of 2); § 521.687-086, 1991 WL 674226 (stating "nut sorter" has an SVP

level of 2).[6] The ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace by incorporating in the RFC (and the hypothetical to the VE) the limitation of "simple, routine repetitive tasks," Tr. at 34 (emphasis omitted), and finding Plaintiff can perform unskilled work, Tr. at 47. See, e.g., Winschel, 631 F.3d at 1179; Scott, 495 F. App'x at 29.

Additionally, substantial evidence supports the ALJ's determination that Plaintiff can perform unskilled work and "simple, routine repetitive tasks," despite her moderate limitations in concentration, persistence, and pace. See, e.g., Tr. at 549 (December 8, 2015 emergency department note indicating Plaintiff was "alert and oriented to person, place, and time"); Tr. at 1583-85, 1593-95,[7] 1512-13, 1535-36, 1561-63 (July 2018, February 2018, July 2017, April 2017, and December 2016 treatment notes from Coastal Spine and Pain Center ("Coastal Spine and Pain") indicating that Plaintiff was "alert"; "oriented to person, place, time and situation"; "able to follow complex instructions"; and "polite, appropriate with staff," that she "follow[ed] check in procedure correctly and without problem," that her "continuity of thought [was] normal"; her "thought content" was coherent and showed no delusions; her

---

[6]      Although the VE identified the DOT title as "sorter," the DOT section number he provided corresponds to the title of "nut sorter." See Tr. at 276; see also Tr. at 47 (Decision).

[7]      The treatment note contained in pages 1590 through 1595 of the administrative transcript is dated February 8, 2018, Tr. at 1590, but was signed on April 7, 2018, Tr. at 1595. The undersigned considers the date of the treatment note to be the date of the actual appointment: February 8, 2018.

memory was "slightly diminished"; her judgment and "insight into situation" were "fair"; and her intelligence and fund of information "appear[ed] average"). Although not all medical notes show normal findings, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff can perform unskilled work and "simple, routine repetitive tasks," and it is not for this Court to reweigh the evidence. See Crawford, 363 F.3d 1155, 1158-59; Cornelius, 936 F.2d at 1145. It is clear the ALJ considered the record as a whole.

Moreover, Plaintiff points to no evidence indicating that her moderate limitations in concentration, persistence, or pace would prevent her from performing the type of light work described in the RFC. See generally Pl.'s Mem. at 6-7.

For the foregoing reasons, the undersigned finds that the ALJ properly accounted for Plaintiff's moderate limitations in concentration, persistence, and pace in both the RFC and the hypothetical to the VE.

### b. Interaction with Others

The ALJ found that Plaintiff has only a "mild limitation" in interacting with others. Tr. at 33. Plaintiff does not challenge this finding; rather, she argues that the hypothetical posed to the VE did not account for Plaintiff's mild limitations in this area. See Pl.'s Mem. at 6-7. Plaintiff does not identify any restrictions that are caused by Plaintiff's mild limitations in interacting with others that should have been included in the hypothetical to the VE. Given that

the limitations found by the ALJ were only mild, the undersigned finds no error in the ALJ's hypothetical.[8]

## B.  Medical Opinions

### 1.  Parties' Arguments

Plaintiff contends the ALJ erred in "discount[ing] the opinions of [Ms. Ervin,] the only treating source that comments on [P]laintiff's ability to perform job functions," Pl.'s Mem. at 8, and in giving "considerable weight to [Dr. Meyer,] who opined in August 2016 that [P]laintiff was capable of a range of light work," Id. at 4; see id. at 7-8. Plaintiff asserts the ALJ erred because Dr. Meyer's opinion was rendered before Plaintiff was admitted to a hospital in October 2016 under the Baker Act. Id. at 8.

Responding, Defendant asserts that "the ALJ was not required to articulate specific reasons for discounting [Ms.] Ervin's assessments" because she is not an "acceptable medical source" under the Regulations. Def.'s Mem. at 10. "In any event," argues Defendant, "the ALJ provided good reasons, supported by substantial evidence, for according no significant weight to [Ms.] Ervin's assessments." Id. (citations omitted). Defendant does not address

---

[8]     As noted, the limitations included in the hypothetical were identical to those later included in the RFC.

Plaintiff's argument regarding the ALJ's assessment of Dr. Meyer's opinion. See generally Def.'s Mem. at 8-15.

### 2.  Applicable Law[9]

"Medical opinions are statements from physicians or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1); see also 20 C.F.R. § 404.1513(a). Acceptable medical sources include licensed physicians, licensed psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[10]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating

---

[9]        On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5844). Because Plaintiff filed her claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed.

[10]        For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed APRNs, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." <u>Schink v. Comm'r of Soc. Sec.</u>, 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." <u>Id.</u> at 1260 (citing <u>Sharfarz v. Bowen</u>, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)). The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); <u>see also</u> 20 C.F.R. § 404.1527(f); <u>Walker v. Soc. Sec. Admin., Comm'r</u>, 987 F.3d 1333, 1338 (11th Cir. 2021); <u>McNamee v. Soc. Sec. Admin.</u>, 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

With regard to a treating physician,[11] the Regulations instruct ALJs how to properly weigh such a medical opinion. <u>See</u> 20 C.F.R. § 404.1527(c)(2). Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s)," a treating physician's medical opinion is to be afforded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. <u>Id.</u> When a treating physician's medical opinion is not due controlling weight, the ALJ must determine the appropriate weight it should be given by considering the factors identified above (the length of treatment, the frequency of examination, the nature and extent of the treatment relationship, as well as the supportability of the opinion, its consistency with the other evidence, and the specialization of the physician). <u>Id.</u>

If an ALJ concludes the medical opinion of a treating physician should be given less than substantial or considerable weight, he or she must clearly articulate reasons showing "good cause" for discounting it. <u>Walker</u>, 987 F.3d at 1338 (citation omitted); <u>Schink</u>, 935 F.3d at 1259; <u>Hargress v. Soc. Sec. Admin.,</u>

---

[11]     A treating physician is a physician who provides medical treatment or evaluation to the claimant and who has, or has had, an ongoing treatment relationship with the claimant, as established by medical evidence showing that the claimant sees or has seen the physician with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for the medical condition. <u>See</u> 20 C.F.R. § 404.1502.

Comm'r, 883 F.3d 1302, 1305 (11th Cir. 2018) (citation omitted); Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause exists when (1) the opinion is not bolstered by the evidence; (2) the evidence supports a contrary finding; or (3) the opinion is conclusory or inconsistent with the treating physician's own medical records. Walker, 987 F.3d at 1338; Schink, 935 F.3d at 1259; Hargress, 883 F.3d at 1305; Phillips, 357 F.3d at 1240-41; see also Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991); Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987) (stating that a treating physician's medical opinion may be discounted when it is not accompanied by objective medical evidence).

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel, 631 F.3d at 1179 (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

Opinions from sources "who are not technically deemed 'acceptable medical sources' . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." SSR 06-03p, 2006 WL 2329939, at *3.[12]  Generally, the ALJ "generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows [the] claimant or subsequent reviewer to follow the [ALJ's] reasoning, when such opinions may have an effect on the outcome of the case." Id. at *6; 20 C.F.R. § 404.1527(f)(2).

### 3.  Analysis

#### a.  Ms. Ervin's Opinions

As noted, Ms. Ervin is an APRN, who has treated Plaintiff for her mental health impairments. See Tr. at 86-243, 1383-417. On June 18, 2018, Ms. Ervin completed a check-off form titled, Medical Mental Assessment of Ability to Do Work-Related Activities (Mental) ("Medical Assessment"). See Tr. at 1440-42.

The Medical Assessment sets forth a number of work-related activities under three categories: 1) making occupational adjustments; 2) making performance adjustments; and 3) making personal/social adjustments. See Tr.

---

[12]    SSR 06-03p was rescinded on March 27, 2017, but this rescission applies only to claims filed on or after March 27, 2017. SSR 96-2P, 2017 WL 3928305, *1 (stating the "rescission will be effective for claims filed on or after March 27, 2017"); Rescission of Social Security Rulings 96-2p, 96-5p, and 06-3p, 82 Fed. Reg. 15,263-01, 15,263 (Mar. 27, 2017) (same). SSR 06-03p therefore applies to Plaintiff's claim.

at 1440-41. The Medical Assessment then asks the evaluator to determine whether the patient has problems with any of the activities by assigning one of the following ratings to each activity: "not significantly limited"; "moderate"; "marked"; and "extreme." Tr. at 1440-41 (capitalization and emphasis omitted).

In the first category (making occupation adjustments), Ms. Ervin opined that Plaintiff has marked limitations in following rules, relating to co-workers, functioning independently, and paying attention/concentrating; and that Plaintiff has extreme limitations in dealing with the public, using good judgment, interacting with supervisors, and dealing with stressors. Tr. at 1440-41. In support of these opined limitations, Ms. Ervin stated that Plaintiff "struggles with interactions in public and private" and that "[s]he hallucinates, is paranoid tearful and afraid." Tr. at 1441.

In the category of making performance adjustments, Ms. Ervin opined Plaintiff has marked limitations in understanding, remembering, and carrying out detailed jobs descriptions and extreme limitations understanding, remembering, and carrying out complex jobs descriptions. Tr. at 1441. Ms. Ervin checked both the "moderate" and "marked" ratings when answering the degree of limitation associated with understanding, remembering, and carrying out simple jobs descriptions. Tr. at 1441. In support of these opinions, Ms. Ervin indicated Plaintiff "is very disorganized, bizarre, paranoid, forgetful and nervous." Tr. at 1441.

In the last category—making personal/social adjustments—Ms. Ervin opined Plaintiff has marked limitations in maintaining personal appearance and has extreme limitations in behaving in an emotionally stable manner, relating predictably in social situations, and demonstrating reliability. Tr. at 1441. In support, Ms. Ervin opined that Plaintiff's "appearance varies day to day" and that "her emotions fluctuate with the hallucinations and anxiety." Tr. at 1441-42.

In addition to the above, Ms. Ervin opined she expects Plaintiff would miss more than seven days of work per month. Tr. at 1442.

Ms. Ervin also wrote two letters: one dated September 28, 2017, Tr. at 341, 1201 (duplicate), and one dated June 28, 2018 (about eight days after the Medical Assessment), Tr. at 1508. In both letters. Ms. Ervin opined that Plaintiff "meets the criteria for disability . . . ." Tr. at 341, 1201 (duplicate), 1508. The letters also state, "[Plaintiff] continues to hallucinate, have serious delusions, is disorganized, tangential, racing thoughts, poor focus, intense fear, severe nervousness and paranoia." Tr. at 341, 1201 (duplicate), 1508.

The ALJ summarized Ms. Ervin's progress notes and opinions in detail, <u>see</u> Tr. at 43-44, and assigned them "no significant weight," Tr. at 43. In discounting Ms. Ervin's opinions, the ALJ explained that Ms. Ervin's "assessments are not consistent with the other medical evidence of record," Tr. at 44, and that Ms. Ervin's treatment of Plaintiff "appears to have been primarily done without participation of an M.D.[ ] or Ph.D.," Tr. at 45. As

explained below, these reasons are supported by substantial evidence, and the undersigned finds no error in the ALJ's assessment of Ms. Ervin's opinions.

In finding that Ms. Ervin's opinions were inconsistent with the other medical evidence, the ALJ specifically noted that although "psychological [progress] notes document clinical abnormalities, the severity of the findings is not corroborated by the other treating source medical evidence of record (mostly from Coastal Spine [and] Pain) which reflects only mild or normal findings." Tr. at 44 (citation omitted). For example, as the ALJ stated, according to Ms. Ervin's records, "Plaintiff's psychological treatment goal is to manage auditory and visual hallucinations," but "according to . . . July 2018 Coastal Spine and Pain records, she does not experience hallucinations." Tr. at 44 (citation omitted); see Tr. at 1585 (July 2018 treatment note from Coastal Spine and Pain indicating Plaintiff has "no hallucinations"). The ALJ accurately observed that the notation in the Coastal Spine and Pain records was "not incidental" because "initial" treatment notes from Coastal Spine and Pain show that Plaintiff "had recently been admitted to the psychiatric ward at UF Health Jacksonville" and "that [Plaintiff's] psychological status put her at risk with respect to aggressive opioid therapy." Tr. at 44 (citation omitted); see Tr. at 1574 (November 2016 treatment note from Coastal Spine and Pain indicating, "[T]he significant concerns raised by [Plaintiff's] previous note from UF Health Jacksonville dictate that I be conservative regarding opioid medications . . . ."). "Hence," stated the ALJ, "treating sources at Coastal Spine and Pain were aware of the

likelihood of mental health symptoms and were evaluating the same in determining [Plaintiff's] continuing suitability for opiate medication." Tr. at 44. Additionally, the ALJ accurately noted that other treatment notes from Coastal Spine and Pain show relatively normal mental status exam findings. See, e.g., Tr. at 1584-85, 1594-95, 1513, 1536, 1562-63 (July 2018, February 2018, July 2017, April 2017, and December 2016 treatment notes from Coastal Spine and Pain Center treatment notes showing Plaintiff presented with good hygiene, her behavior was appropriate, she had normal speech volume and rate, she was able to interact reasonably well with the interviewer, she used words appropriately, she had a normal stream of thought, her continuity of thought was normal, her thought content had no delusions and was coherent, she had no hallucinations, she was oriented, her judgment was fair, her intelligence appeared average, and her fund of knowledge appeared average).[13] Moreover, the ALJ accurately observed that although Plaintiff brought a "stuffed bear" to a January 2018 appointment with Ms. Ervin, she was seen at Coastal Spine and Pain that same month, and there is no mention of a stuffed bear in those treatment notes. Tr. at 44; see Tr. at 1398 (January 2018 progress note indicating Plaintiff "presented with a stuffed pillow bear that she used to wring and hug during the session today"); see Tr. at 1222-27 (January 2018 treatment note from Coastal Spine and Pain). Indeed, as noted by the ALJ, Plaintiff at

---

[13]     Most of these mental exam findings were also summarized supra pp. 13-14.

Coastal Spine and Pain had a "fairly normal mental status examination." <u>See</u> Tr. at 1222-27.

The ALJ acknowledged that Ms. Ervin's progress notes indicate that Plaintiff's concentration and focus are "inadequate," but the ALJ also observed that Ms. Ervin does not "indicate what she means by inadequate." Tr. at 44. As stated by the ALJ, Plaintiff's "focus and concentration have been adequate enough for activities such as driving." Tr. at 44; <u>see, e.g.</u> Tr. at 264-65 (Plaintiff testifying she loves to drive and drives once every four days).

The last reason the ALJ gave for discounting Ms. Ervin's opinion was that Ms. Ervin's treatment of Plaintiff was not done with the supervision of a physician or a Ph.D. Tr. at 45. The ALJ was correct in noting this. Ms. Ervin's opinions are not considered "medical opinions" because she is not an acceptable medical source under the applicable Regulations. <u>See</u> 20 C.F.R. §§ 404.1502(a), 404.1513(a). As such, although her opinions should be considered by an ALJ, they are not medical opinions and are not entitled to any special deference. <u>Leone v. Comm'r of Soc. Sec.</u>, No. 8:19-cv-998-SCB-JSS, 2020 WL 3640061, at *3 (M.D. Fla. June 23, 2020) (unpublished) (citing <u>Himes v. Comm'r of Soc. Sec.</u>, 585 F. App'x 758, 762 (11th Cir. 2014)), <u>report and recommendation adopted sub nom. Leone v. Saul</u>, No. 8:19-cv-998-SCB-JSS, 2020 WL 3640534 (M.D. Fla. July 6, 2020) (unpublished).

In sum, the ALJ clearly considered Ms. Ervin's progress notes and opinions, detailed the weight assigned to Ms. Ervin's opinions, and articulated

specific reasons for such weight. See Phillips, 357 F.3d at 1240-41. The ALJ properly considered Ms. Ervin's opinions, and substantial evidence supports the ALJ's reasoning.

### b. State Agency Medical Consultant's Opinion

Plaintiff mistakenly argues the ALJ gave "considerable weight" to Dr. Meyer's August 2016 opinion that Plaintiff could perform light work. The ALJ actually gave "considerable weight" to the October 2016 opinion of a different state agency medical consultant (Thomas Lawhorn, M.D.). Tr. at 42;[14] see Tr. at 302-04 (Dr. Meyer's opinions, dated August 27, 2016); Tr. at 306 (Dr. Lawhorn's opinion that Plaintiff could perform light work, dated October 21, 2016). As noted, the premise of Plaintiff's argument is that the opinion to which the ALJ gave "considerable weight" was outdated because it was from August 2016—prior to Plaintiff's Baker Act admission. Dr. Lawhorn's opinion (October 21, 2016) post-dates Plaintiff's Baker Act admission (October 12 to October 17, 2016, see Tr. at 981-1031).

In any event, even if Dr. Lawhorn's opinion predated Plaintiff's October 2016 admission, the ALJ would not have erred in assigning it considerable weight because the ALJ did not rely solely on Dr. Lawhorn's opinion in finding that Plaintiff could perform light work with the additional limitations set out

---

[14]    The Decision does not refer to Dr. Lawhorn by name, but the ALJ stated the opinion was from October 2016, and she cited Exhibit B4A that includes Dr. Lawhorn's opinions. See Tr. at 42; see Tr. at 292-307 (Exhibit B4A).

in the RFC. Notably, in giving considerable weight to Dr. Lawhorn's opinion, the ALJ determined that "[s]ubsequent medical records do no[t] establish conditions that could reasonably be expected to result in additional limitations." Tr. at 42. The ALJ then summarized in detail such subsequent evidence. <u>See</u> Tr. at 42-46. It is clear the ALJ considered the evidence as a whole and found that Dr. Lawhorn's opinion was consistent with the largely normal medical findings in the record. <u>See</u> Tr. at 35-46.[15]

## V.  Conclusion

After a thorough review of the entire record, the undersigned finds that the ALJ's Decision is supported by substantial evidence. Accordingly, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **AFFIRMING** the Commissioner's final decision.

2. The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 17, 2021.

_____
JAMES R. KLINDT
United States Magistrate Judge

bhc
Copies to:
Counsel of Record

---

[15]    Plaintiff does not argue that the light work RFC is not supported by substantial evidence (except for Plaintiff's first argument addressed above regarding Plaintiff's limitations in concentration, persistence, and pace and in interacting with others).